United States Court of Appeals, Fifth Circuit.

No. 92-2624.

Edwin Joseph JOHNSTON, Plaintiff-Appellee,

v.

The CITY OF HOUSTON, Texas, et al., Defendants,

R.C. Owens, Sergeant, J.P. Trevino, Sergeant, B.A. Bridwell-Oglesby, Officer, Defendants-Appellants.

Feb. 25, 1994.

Appeals from the United States District Court for the Southern District of Texas.

Before GARWOOD and BARKSDALE, Circuit Judges, and WALTER[1], District Judge.

WALTER, District Judge:

Defendants Owens, Trevino and Bridwell—Oglesby appeal the denial of their motions for summary judgment based upon qualified immunity. Plaintiff-Appellee has failed to state a claim for or tender evidence of a constitutional violation against Defendant-Appellant Owens and we reverse and order dismissal of Plaintiff's claims against Owens with prejudice. Plaintiff-Appellee has stated a proper claim against Defendants-Appellants Trevino and Bridwell-Oglesby; a genuine dispute as to material facts remains. Therefore, we dismiss the appeal as to those defendants.

*THE FACTS*

On May 28, 1989, Plaintiff-Appellee Edwin Johnston ("Johnston") participated in a political protest demonstration at the consulate of the People's Republic of China in Houston, Texas. The demonstrators were primarily Asian, there to protest the human rights abuses in the People's Republic of China during the Tiananmen Square massacre. Assigned to the area for the purpose of traffic assistance and crowd control were Defendant-Appellant R.C. Owens ("Owens"), attired in plainclothes, and Defendant Humberto Lopez ("Lopez") and Defendants-Appellants J.P. Trevino ("Trevino") and B.A. Bridwell-Oglesby ("Oglesby"), all uniformed.

Divergent versions of what happened have been offered by Appellants and Johnston.

[1]District Judge of the Western District of Louisiana, sitting by designation.

According to Owens, he noticed Johnston "pumping his fist into the air and yelling "right-wing white supremist' [sic] remarks." Johnston obtained a megaphone and began making remarks about then-President George Bush, governmental repression, and other declarations such as "down with President Bush" and "long live skin heads." According to Trevino and Oglesby, Johnston "took control" of the megaphone which was then "forcibly taken away" from him by, apparently, the rightful possessor. This resulted in a confrontation between Johnston and the unidentified protestor. According to Johnston, after being given the megaphone, he was asked to return it after his comments strayed from the central issues of the protest. He and several protestors then began discussing the propriety of voicing comments unrelated to the People's Republic of China.

Owens, Trevino and Oglesby uniformly contend that, at Owens' direction[2], Officer Lopez approached Johnston and tapped him on the shoulder in a non-offensive manner in order to get his attention. Suddenly, Johnston swung his arms, striking Lopez' hand. Trevino, Oglesby and Lopez then arrested Johnston.

Not surprisingly, Johnston's depiction contrasts sharply with the above. Johnston contends that he was asked by a Houston police officer if there was any problem. After replying in the negative, Johnston told the officer that he and the protestors were discussing the merits of democracy. He then resumed his high volume, angered diatribe against the policies of the United States government, its president and "governmental repression generally." Plaintiff's Original Complaint at 5. Johnston was then approached from several directions by Houston police officers, subdued and arrested. At the Houston Police Department Montrose substation, Johnston was charged with assault and resisting arrest. Johnston argues that he was arrested for his political activism. Moreover, he claims that the Criminal Intelligence Division of the Houston Police Department ("CID") has followed a long-standing policy of engaging in the surveillance of political demonstrations and maintaining dossiers on the protestors regardless of their participation or nonparticipation in criminal activity. Johnston submits a settlement agreement between the Houston chapter of the American Civil

---

[2]Owens' involvement appears to have been limited to instructing Lopez to approach Johnston and inquire as to his identity.

Liberties Union and the City of Houston prohibiting the CID's maintenance of surveillance files "based solely on a citizen's political affiliation or activities." Johnston claims to fall within the protective scope of the settlement agreement and offers the depositions of several individuals prominent in the dissident community to support his claim that the agreement has been breached.

On May 28, 1991, Johnston filed suit against the City of Houston and five Houston Police Department Officers under 42 U.S.C. §§ 1983 and 1988. In his original complaint, Johnston asserted that:

> [e]ach of the officers named as individual defendants in this complaint participated in, directed, supervised, controlled, or was otherwise responsible for Plaintiff's unconstitutional apprehension, detention, imprisonment, and criminal prosecution on pretextual charges of assault and resisting arrest that were unsupported by probable cause. Such actions by such individual officers violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments[3] to the Constitution of the United States.

To support his allegations, Johnston submitted his sworn affidavit and that of Victor Lavergne. The criminal charges against Johnston were eventually dismissed. Owens, Trevino and Oglesby moved for summary judgment based upon qualified immunity, supported by the depositions of Owens, Lopez and Trevino. On July 9, 1992, Judge Lynn N. Hughes of the Southern District of Texas denied the officers' motions. This appeal followed.

*THE LAW*

*Standard of Review*

The standard of review in this Court following the denial of summary judgment is *de novo.* *Mozeke v. International Paper Co.,* 856 F.2d 722, 724 (5th Cir.1988).

*Principles of Qualified Immunity*

The qualified or "good faith" immunity doctrine was established to reconcile two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge

---

[3]Since Johnston has not referred to the specific passages of the Fourteenth Amendment implicated, this Court assumes that he was referring to the incorporation feature of that amendment applying the Bill of Rights to the States.

of their duties.[4]  Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

> "The jurisprudence of the qualified immunity doctrine is familiar.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.'  *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)....   Qualified immunity is available to state officials sued for constitutional violations pursuant to 42 U.S.C. § 1983.  See *Harlow,* 457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30 (citing *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)).
>
> Whether a government official is entitled to qualified immunity "generally turns on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.'  *Texas Faculty Ass'n v. University of Texas at Dallas,* 946 F.2d 379, 389 (5th Cir.1991) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)).  The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Id.* at 389-90.  The standard is formulated at this level of generality in order to afford the measure of protection that the doctrine is intended to confer.  See *Anderson,* 483 U.S. at 639-40, 107 S.Ct. at 3039.  Therefore, "the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence, more relevant sense.'  *Id.* at 640, 107 S.Ct. at 3039.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.'  *Id.*  **If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.**  *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990).  Whether the conduct of which the plaintiff complains violated clearly established law is an essentially legal question.  *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); *Pfannstiel,* 918 F.2d at 1183."

*White v. Taylor,* 959 F.2d 539, 544 (5th Cir.1992).

*Methodology of Review*

Consistent with these principles, the Supreme Court adopted a distinct analytical structure for reviewing an appeal of a denial of summary judgment asserting qualified immunity.  *Siegert v. Gilley,* 500 U.S. 226, ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  This circuit has had several opportunities to utilize this framework.  *See, Duckett v. City of Cedar Park, Texas,* 950 F.2d 272 (5th Cir.1992);  *Samaad v. City of Dallas,* 940 F.2d 925 (5th Cir.1991);  *Quives v. Campbell,* 934 F.2d 668 (5th Cir.1991).  The first step "is the determination whether the plaintiff has asserted

---

[4]Martin A. Schwartz and John E. Kirklin, Section 1983 Litigation:  Claims, Defenses, and Fees 513 (1991).

a violation of a constitutional right at all." *White,* 959 F.2d at 544; *see Siegert,* 500 U.S. at ----, 111 S.Ct. at 1793.

Next, this Court must examine whether the summary judgment evidence entitles appellants to qualified immunity. Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact. *See, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact. This showing requires more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584-86, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.; see Boeing Company v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (*en banc* ). While the party opposing the motion may use proof filed by the movant to satisfy his burden, "only evidence—not argument, not facts in the complaint—will satisfy" the burden. *Solo Serve Corp. v. Westowne Assoc.,* 929 F.2d 160, 164 (5th Cir.1991). "Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White,* 929 F.2d 206, 211 n. 12 (5th Cir.1991). The non-movant may defeat the motion by showing a genuine dispute of material fact. *International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257 (5th Cir.1991), *cert. denied* --- U.S. ----, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In the absence of a genuine issue as to a material fact, we review the summary judgment record to ascertain the objective reasonableness of the defendants' actions. This is done by deciding whether the contours of the rights in question were clearly established. "The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial of that right and its claimed violation; but as stated, the benchmark for

objective reasonableness is that which existed at the time of the alleged violation—we look to clearly established law at that time." *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993).

Moreover, "if disputed factual issues material to [qualified] immunity are present, the district court's denial of summary judgment is not appealable." *Feagley v. Waddill,* 868 F.2d 1437, 1439 (5th Cir.1989); *see also, Lampkin v. City of Nacogdoches,* 7 F.3d 430 (5th Cir.1993).

## THE OFFICERS

### Owens

The record demonstrates that Owens instructed Lopez to determine who Johnston was and what he was doing. Nowhere has Plaintiff-Appellee alleged that Owens instructed Lopez to detain Johnston in any manner. Additionally, in Johnston's version, he moved away from Lopez after that officer made his inquiry, eliminating the possibility that he reasonably felt detained. Thus, Johnston has utterly failed to carry his burden with respect to Defendant-Appellant Owens. Johnston's complaint regarding Owens is cast in broad, indefinite and conclusory terms. Although Johnston asserts a constitutional violation, his complaint fails to allege sufficient involvement by Owens to lay a foundation for recovery under § 1983. Quite simply, even if all of Johnston's evidence were true, no constitutional infringement occurred. Johnston has not submitted any cases, law review articles or other authorities bolstering his conclusion that Owens' instructions to Lopez constituted First, Fourth and Fourteenth amendment violations. Therefore, Plaintiff-Appellee has not stated a constitutional claim against Owens pursuant to *Siegert* and its progeny within this Circuit. Accordingly, the district court erred in denying Owens' motion for summary judgment on the basis of qualified immunity.

### Trevino and Oglesby

Although Johnston levels charges against Owens, Trevino and Oglesby jointly, his complaint includes specific facts regarding the actions of Trevino and Oglesby. In his version, Johnston was subdued by several officers, including Trevino and Oglesby after he answered Lopez' question and continued to protest. "The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is the central meaning of the First Amendment." *New York*

*Times v. Sullivan,* 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). Thus, by arguing that he was arrested for exercising his freedom of speech and setting forth a particularized, fact specific complaint, Johnston has stated a claim for a constitutional violation on First Amendment grounds. Similarly, Johnston succeeds in stating a claim for a Fourth Amendment violation. "[A]n arrest without either a properly issued arrest warrant or probable cause gives rise to a § 1983 claim for relief." Schwartz and Kirklin, *supra* note 1, at 178 (citing *Dennis v. Warren,* 779 F.2d 245 (5th Cir.1985)). "An individual's right to be free from such unlawful arrest and detention is a federally protected right, the violation of which may be grounds for a suit under section 1983." *Dennis,* 779 F.2d at 247.

Since Plaintiff-Appellee has complied with the first step of the *Siegert* analysis, this Court must determine whether qualified immunity is appropriate given the evidence submitted and the contours of the rights allegedly violated. Both sides have offered proper summary judgment evidence to corroborate their version of the facts. Clearly, a genuine dispute as to the material and operative facts of this case exists, as seen by the differing accounts of the various deponents. Summary judgment is inappropriate unless plaintiff's version of the violations does not implicate clearly established law. This is not the case. Plaintiff's claims are neither novel nor obscure. Rather, he has asserted gross infringements of fundamental constitutional protections. If Johnston's facts prove to be true, Defendants-Appellants are either "plainly incompetent or knowingly violated the law." Therefore, under *Feagley* and *Lampkin,* supra, the district court's denial of summary judgment is not appealable. Trevino and Oglesby's appeal must be dismissed.

Accordingly Trevino and Oglesby's appeal is DISMISSED and the district court order denying Owens' motion for summary judgment is REVERSED.