Calvin WIMER and Charlotte Wimer, Plaintiffs,

v.

H.R. HOLZAPFEL, Individually and as Sheriff of Hardin County, Texas, and the County of Hardin, State of Texas, Defendants.

No. 1:93–CV–341.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 27, 1994.

Rife Kimler, Beaumont, for plaintiffs.

John W. Newton, III, Orgain Bell & Tucker, Beaumont, for defendants.

## MEMORANDUM OPINION

COBB, District Judge.

### Background

Plaintiffs, the Wimers, have brought this action alleging Defendants, Sheriff Holzapfel (Holzapfel) and Hardin County, Texas: (1) conspired to deprive them of property, liberty, free speech and free association in violation of 42 U.S.C. § 1983, 28 U.S.C. § 1343 and the First and Fourteenth Amendments of the United States Constitution; and (2) violated sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 2). Defendants have moved for summary judgment contending that the law and facts do not create a cause of action and, in the alternative, that Holzapfel is entitled to qualified immunity.

The circumstances surrounding this case are, not surprisingly, the subject of some disagreement. The parties do, however, seem to agree on the basic facts.

The Plaintiffs are the sole proprietors of a business known as Wimer's Auto & Truck Service (Wimer's Auto) in Kountze, Texas. The company provides automobile repair services and also provides a towing and wrecking service for the area surrounding Kountze. Prior to the events which led to this suit, Wimer's Auto was on the rotational list for wrecker service maintained by the Hardin County Sheriff's Department.[1] The Sheriff's department used the list to determine which wrecker service would be employed when, pursuant to Texas state law, an illegally parked or disabled automobile had to be towed.[2]

In addition to running Wimer's Auto, Mr. Wimer is a man of political aspirations. He ran for, and on May 1, 1993, he was elected to, a seat on the Kountze city council. His opponent was Royce Overstreet. The father of Mr. Overstreet is alleged to be a good friend of Sheriff Holzapfel.

On May 3, 1993,[3] Sheriff Holzapfel removed Wimer's Auto from the Hardin County rotational list for wrecking and towing services. Mr. Wimer contends that this removal is a none too subtle retaliation for the defeat that the Sheriff's friend, Mr. Over-

---

1. The wrecker rotation list had been started by Sheriff Holzapfel on February 13, 1990.

2. When a automobile is improperly parked, and the owner is unavailable to effect the removal of the vehicle, Texas law provides that "[a]ny commissioned member of the Department of Public Safety or a peace officer, listed under Article 2.12, Code of Criminal Procedure, is hereby authorized to remove, or to require the driver or the person in charge of the vehicle to remove, a vehicle from a highway street or road ..." TEX. REV.CIV.STAT.ANN. art. 6701d § 94 (Vernon's Supp.1994).

3. *See* Charlotte Wimer, Aff. par. 6.

street, suffered at the hands of Plaintiff. The Sheriff claims that Mr. Wimer was only removed from the list due to concerns that there might be a conflict of interest if someone in Mr. Wimer's position was allowed to continue to provide services to the city.[4]

Plaintiff now claims that removing him from the list was an improper retaliation for the exercise of his First Amendment rights.

### Standard of Review

It is well-settled that a motion for summary judgment can be granted only if the matters considered by the court clearly demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); FED.R.CIV.P. 56(c). It is equally well-settled that the burden of proving that "no genuine issue of material fact exists," rests with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party meets this threshold, the burden shifts to the nonmoving party to demonstrate with significant probative evidence that there exists a genuine issue of fact to be tried. *Kansa Reinsurance v. Congressional Mort. Corp.*, 20 F.3d 1362, 1371 (5th Cir.1994); *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir.1994). This requires that the nonmoving party produce more than some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Only

evidence, not unsworn pleadings, memoranda or the like, will satisfy this burden. *Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir.1991). When a rational jury, looking at the record as a whole, could not find for the nonmoving party, no issue of material fact exists and summary judgment is proper. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (*en banc*).

### Sherman Act Claims

█ This Court is convinced that Defendant's Motion for Summary Judgment is proper with respect to Plaintiff's claims of antitrust violations.[5]

"It is well settled that summary judgment is appropriate in antitrust cases where a plaintiff is unable to produce 'significant probative evidence' to support the bare allegations in its complaint." *Cranefill v. Scott & Fetzer Co.*, 773 F.Supp. 943 (E.D.Tex.1991) (citing *First National Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Plaintiffs "may not rest upon the mere allegations or denials of [their] pleading, but ... must set forth specific facts showing that there is a general issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

█ To prevail under § 1 of the Sherman Act, Plaintiffs must show that a combination or conspiracy existed between two or more entities. *Fisher v. City of Berkeley*, 475 U.S. 260, 266, 106 S.Ct. 1045, 1049, 89

---

**4.** Some background is necessary to understand Sheriff Holzapfel's stated concerns. At the time this controversy arose, the City of Kountze did not have its own police department. Instead, Kountze had contracted with the Hardin County Sheriff's department for police protection. Part of the job of whoever had the Kountze police protection contract would be to determine how to enforce TEX.REV.CIV.STAT.ANN. art. 6701d § 94. *See* note 2, *supra*. Sheriff Holzapfel contends that it would be improper to allow a member of city council to benefit, directly or indirectly, from the police protection contract the council had made with the Sheriff's department.

**5.** While Plaintiff alleges violations of both § 1 and § 2 of the Sherman Act, this court is con-

vinced that no possible action lies under § 2. To prove attempted monopolization under § 2, Plaintiffs must demonstrate that defendant: (1) had the specific intent to monopolize the towing industry; (2) the relevant market; (3) predatory and anticompetitive acts; and (4) a dangerous probability of successful monopolization. *Advanced Health-Care Services v. Radford Comm. Hosp.*, 910 F.2d 139 (4th Cir.1990). Plaintiff fails to provide evidence that supports any of the above listed criteria. It stretches the imagination to the limits to believe that Hardin County was ever in danger of having its tower and wrecker industry monopolized by Sheriff Holzapfel.

L.Ed.2d 206 (1986). An entity and its employees cannot, merely by acting together, constitute a "conspiracy" within the meaning of § 1 of the Sherman Act. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769, 104 S.Ct. 2731, 2740, 81 L.Ed.2d 628 (1984). Plaintiffs must also show that there is, as a result of Defendant's activities, some anti-competitive effect in the relevant market. *Kiepfer v. Beller,* 944 F.2d 1213, 1221 (5th Cir.1991); *Daniels v. All Steel Equip., Inc.,* 590 F.2d 111, 113 (5th Cir.1979).

■ Plaintiff fails to offer any "significant probative evidence" that the Hardin County Sheriff's office conspired with anyone or that the actions of the Sheriff's office had any anti-competitive effect on the relevant market. In fact, Plaintiff even fails to make these specific allegations in its complaint. So even if this court could accept allegations made in a pleading as support for Plaintiff's Motion to Deny Summary Judgment, Defendant's motion should still be granted.

### Deprivation of Property

This Court is equally skeptical of Plaintiff's claim that he has been denied property or liberty in violation of the Due Process Clause.

■ In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest. *See e.g. Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). To have a property interest in a public benefit, a plaintiff "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source of state law." *Id.* Plaintiff will establish a property interest if he can demonstrate: (1) that state law expressly or impliedly created an expectation of continued presence on the Hardin County rotational list; or (2) that there was a mutual understanding that he

would not be removed from the list absent a bona fide reason.

■ Texas law does not expressly create an entitlement for access to, or presence on, the Hardin County rotational list. The relevant statute merely empowers local authorities to tow abandoned or disabled vehicles. TEX.REV.CIV.STAT.ANN. art 6701d § 94 (Vernon's Supp.1994). *See* note 2, *supra.* It does not provide for the creation or administration of a list. Sheriff Holzapfel could have used the same towing service every time. He did not have to create a list. Furthermore, once the list was created, he was under no duty to employ a rotational system. In situations where the existence and administration of a towing list is *wholly* within the discretion of a public official, other courts have held that no property interest is created. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1062 (2d Cir.1993); *Contra Pritchett v. Alford,* 973 F.2d 307, 317 (4th Cir.1992) (where statute required that each municipality establish wrecker zones, create a rotational wrecker-list for each zone, and directed that the list be fairly administered to ensure that all wreckers on the list had equal opportunity to participate, a property interest was created.) *and Abercrombie v. City of Catoosa, Okl.,* 896 F.2d 1228, 1232 (10th Cir.1990) (same).

■ Texas law also fails to provide Plaintiff with an implied property right. Under Texas law, a contract for services that makes no specific provision for duration is presumed to be terminable at will. *East Line & Red River R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888); *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723 (Tex.1990). Employment that state law permits to be terminated at any time is not a property right that is protected by the Due Process Clause. *See e.g. Bishop v. Wood,* 426 U.S. 341, 345–347, 96 S.Ct. 2074, 2078–79, 48 L.Ed.2d 684 (1976) (court affirms finding that at-will employment did not create property right) *and Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993).

■ Plaintiff admits that he had no contract with the city for towing services. The

sheriff was free to remove Plaintiff from the list at anytime. Under Texas law, this is at best at-will employment. As such, it did not create a property right.

■ Finally, we turn to the issue of whether Plaintiffs and Hardin County had a mutual understanding that a company would be taken off the rotational list only for good cause. Defendants, contending that no such understanding existed, offer as evidence a portion of Mr. Wimer's deposition. The deposition makes it clear that while Mr. Wimer had a unilateral expectation that he would not be taken off the rotational list, he is unable to point to any oral or written statements by either Sheriff Holzapfel or Hardin County that would indicate that this expectation was created by Defendants. A unilateral expectation, as noted above, will not create a property interest. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

### Goodwill and Liberty Interest

■ The Plaintiffs assert, in their Response to Defendant's Motion for Summary Judgment, that the real property interest impinged is a loss of goodwill in Wimer's Auto. Plaintiffs claim that being removed from the rotational list created a perception in the community that Wimer's Auto is less than reputable and that this perception caused injury to their business. Plaintiff's style this complaint as a loss of a property interest. The gravamen of his complaint concerning both the goodwill and the liberty deprivation claims, however, is whether the state has caused damage to Plaintiff's reputation. The Court will therefore analyze these two issues simultaneously.

The Supreme Court announced, in *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976), that there is no "constitutional doctrine converting every defamation by a public official into a deprivation of liberty within the meaning of the Due Process Clause of the Fifth and Fourteenth Amendments." To be actionable, plaintiffs must show that the alleged state action both created a stigma and infringed on some other interest. *See San Jacinto Sav. & Loan v.*

*Kacal,* 928 F.2d 697, 701 (5th Cir.1991); *Connelly v. Comptroller of. the Currency,* 876 F.2d 1209, 1215 (5th Cir.1989); *Geter v. Fortenberry,* 849 F.2d 1550, 1557 (5th Cir.1988).

Assuming *arguendo* that Plaintiff is able to demonstrate that loss of goodwill is a property interest within the meaning of the Due Process Clause, he must still offer this Court at least some evidence that the actions of the state served to stigmatize him or his business. Since he fails to do this, both his deprivation of liberty and loss of goodwill claims fail.

■ To prove that his reputation has been stigmatized, Plaintiff must demonstrate: (1) that the stigma is the result of a public official's false communication;[6] and (2) that the communication is based on concrete, false representations or assertions of wrongdoing on the part of Plaintiff. *Connelly,* 876 F.2d at 1215.

Plaintiff offers no evidence that Sheriff Holzapfel or Hardin County made false statements concerning Plaintiff or that either Defendant accused Plaintiff of any wrongdoing. Plaintiff's sole assertion is that he was removed from the list because he won the city council election. Plaintiff offers no evidence that Defendants contend that his election was somehow improper or illegal. Even if Plaintiffs take the questionable position the removal from the rotational list is a form of "statement," the statement is neither false nor the type of concrete assertion required under *Connelly. Connelly,* 876 F.2d at 1215.

This dearth of evidence makes summary judgment proper as to both the loss of goodwill and the deprivation of liberty claims.

### First Amendment Violations

■ Plaintiff's final § 1983 claim is that Sheriff Holzapfel retaliated against him for the exercise of his First Amendment rights. The right to seek and hold political office is protected under the First Amendment. *United States v. Tonry,* 605 F.2d 144, 150 (5th Cir.1979); *see also Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The Supreme Court has held that a property right is not required for

---

6. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

a First Amendment retaliatory claim. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Perry,* the Supreme Court stated that "even though a person has no 'right' to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry,* 408 U.S. at 597, 92 S.Ct. at 2697. The Fifth Circuit analyzed a claim similar to Plaintiffs' in *North Mississippi Comm., Inc. v. Jones,* 792 F.2d 1330 (5th Cir.1986). In *Jones,* the plaintiffs, a newspaper, alleged that defendants, the DeSoto County Board of Supervisors (the Board), ceased all advertising with plaintiffs in retaliation for several editorials published by plaintiff which were critical of certain board members. Plaintiffs claimed that this retaliation was violative of 42 U.S.C. § 1983. The Fifth Circuit held that while the newspaper had no "right" to continued advertising by the Board,[7] the Board could not discontinue advertising merely because the plaintiffs chose to exercise their First Amendment rights. *Jones,* 792 F.2d at 1337.

Plaintiff is in a similar situation. Although, as discussed above, he had no property interest in the rotational list, Defendants may not remove him from the list in retaliation for exercising his constitutional rights.

Defendants correctly point out that in order to prevail at trial Plaintiffs will have to demonstrate that the city council election was a "substantial" or "motivating" cause of the removal. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Defendants must realize that for Plaintiff to survive a motion for summary judgment he only needs to produce evidence sufficient to lead this court to believe that Defendant's true motivation (for removing Plaintiff from the rotational list) is one which creates a genuine issue of material fact.

This court cannot, however, rely upon mere conclusory allegations that Sheriff Holzapfel acted improperly. "At the summary judgment stage we require *evidence*—not absolute proof, but not mere allegations either." *Reese v. Anderson,* 926 F.2d 494, 499 (5th Cir.1991). For an affidavit to support a parties' position, the document must supply "facts, reasons, observations and explanations—in a word *evidence*—not sweeping conclusions." *Reese,* 926 F.2d at 499. Plaintiffs fail to provide the type of evidence required to survive this motion for summary judgment.

Plaintiff, Calvin Wimer, testified that he has no idea why the Sheriff removed him from the list.

Q: Have you seen any written documents, any papers of any nature whatsoever, that would indicate or tell you why the sheriff took you off the dispatch list?

A: I have not seen documents, no.

Q: *Do you have a personal feeling as to why the Sheriff took you off the dispatch list, or do you know?*

A: *I don't know.*

Q: You just know that you were on May 1st, and May 2nd, you were off, and on October 1st, you were back on?

A: That's correct.

(*See* Calvin Wimer Dep. at 36).

Furthermore, Mr. Wimer states that he has no knowledge of any person who holds the opinion that Sheriff Holzapfel retaliated against Plaintiff for exercising his First Amendment rights.

Q: So, at least from the dispatchers, nobody told you in their opinion why the sheriff took you off the dispatch list?

A: No, sir.

Q: Did anybody tell you why in their opinion the sheriff took you off the dispatch list?

A: No, sir.

Q: So, as you sit here today, *nobody has told you* in their opinions, whether those opinions are right or their opin-

---

7. No contract for advertising existed between the newspaper and the Board.

ions are wrong, *why* they felt *the sheriff took you off the dispatch list?*

A: *No, sir.*

(*See* Calvin Wimer Dep. at 35–36).

Mere speculation as to the existence of a byzantine conspiracy (which no one seems to know about) will not prevent summary judgment. Apart from the Wimers and their attorney, the only person who even mentioned Sheriff Holzapfel's alleged scheme is Police Chief Bobby Fuller (Chief Fuller). At her deposition, Mrs. Wimer stated the Chief Fuller told her that he felt that Mr. Wimer was removed from the rotational list as a form of "punishment" for defeating Royce Overstreet. (*See* Charlotte Wimer Dep. at 40–41). According to Mrs. Wimer, the source of Chief Fuller's information is "courthouse gossip." (*See* Charlotte Wimer Dep. at 40–41). Chief Fuller's alleged statement to Mrs. Wimer is hardly the type of evidence that will defeat a motion for summary judgment. Other than Mrs. Wimer's hearsay statements of Chief Fuller's "feeling" that Wimer's removal was based only on courthouse "gossip," there is no summary judgment proof before the court from any source showing Fuller has any knowledge of Holzapfel's motivations or statements about the matter in dispute. In short, this court has no *evidence* supporting Plaintiff's theory that his removal from the rotational list was improperly motivated.

The factual evidence in support of Plaintiffs boils down to the following: (1) Plaintiff was elected on May 1, 1993, and removed from the list on May 3, 1993; (2) Sheriff Holzapfel "did not care for Calvin Wimer;" (*See* Holzapfel Dep. at 62) and (3) Sheriff Holzapfel and Royce Overstreet's father are friends. (*See* Holzapfel Dep. at 26–27) Putting all of this evidence in the most favorable light for Plaintiffs, there is no evidence that a reasonable jury could use to find that Sheriff Holzapfel had, as a substantial or motivating factor for removing Wimer's Auto from the rotational list, a secret desire to "punish" Plaintiff for defeating Royce Overstreet.

### Qualified Immunity

While the court's ruling on Defendants' motion for summary judgment motion obviates the need to examine the issue of qualified immunity, this court feels it is appropriate to address the question. Even if there was sufficient evidence in the record to support Plaintiffs' First Amendment retaliation claim, Sheriff Holzapfel's actions would be entitled to qualified immunity.

"Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would know." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The law is clearly established if the contours of a right are sufficiently clear so that a reasonable official would understand that what he is doing violates that right. *Texas Faculty Ass'n v. University of Texas at Dallas,* 946 F.2d 379, 389 (5th Cir.1991) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity. *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir.1994); *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990). The law of qualified immunity, therefore, protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). "Whether the conduct of which the plaintiff complains violated clearly established law is an essentially legal question." *Johnston* 14 F.3d at 1059 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985)); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (question of whether law "clearly established" is appropriate question for summary judgment). It is for this court to decide whether Sheriff Holzapfel is entitled to qualified immunity as a matter of law.

Given proper supporting evidence, it may be possible that a plaintiff in Wimer's situation could bring a colorable § 1983 action for improper retaliation for exercise of First Amendment rights. However, this court is less sure that the grounds for this type of action are "clearly established" in the Fifth Circuit. Plaintiff cites no case law for the proposition that a wholly discretionary benefit cannot be withheld from a nongovernment

employee[8] for a constitutionally infirm reason. This court was able to find only one case which, by analogy, supports the position urged by Plaintiff. It is highly unlikely that every "reasonable public official" would draw the same conclusion from the *Jones* case as this court. Reasonable public officials could survey the law and conclude that *Sindermann* and its progeny provide no relief for Plaintiff since he is not a government employee and the rotational list is wholly discretionary. Since reasonable public officials could disagree, qualified immunity bars Plaintiffs' claim that he was removed from the rotational list for exercise of his First Amendment rights.[9]

### Order

After considering the Motion for Summary Judgment, this court, for the reasons stated above, is of the opinion that the Motion should be GRANTED.

---

**8.** The overwhelming majority of *Sindermann* progeny involve a situation where a government *employee* is denied a benefit for a constitutionally infirm reason. In the case at hand, Plaintiff is not an employee of the government, he has no property right in the rotational list and this court was able to unearth only one case that even remotely supports his position (*Jones, supra*).

**9.** The record indicates that Sheriff Holzapfel contacted both the county attorney and the Texas Attorney General's office in an effort to ascertain whether he could properly remove Plaintiff from the rotational list. Both offices were unsure as to the legal ramifications of Plaintiff's removal. If trained attorneys are unable to define the scope of Plaintiff's rights, the law can hardly expect a lay-person to know whether this case falls within the boundaries of "clearly established law."