# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 11, 2007

Charles R. Fulbruge III
Clerk

No. 06-50763

JESSE LEE OWENS, JR, Deceased; BARBARA SHORTS, Mother and
Representative of Estate of Jesse Lee Owens Jr; JESSE LEE OWENS, SR,
Father of Jesse Lee Owens Jr

Plaintiffs-Appellants

v.

CITY OF AUSTIN, City of Austin Police Department; STAN KNEE,
as Chief of Police, in his Official and Individual Capacities; SCOTT
GLASGOW, in his Official and Individual Capacities

Defendants-Appellees

Appeal from the United States United States District Court
for the Western District of Texas
USDC No. 1:05-CV-287

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

As representatives of the estate of their deceased son Jessie Lee Owens,
Jr. ("Owens"), Barbara Shorts and Jessie Lee Owens, Sr. ("Appellants"), brought
suit against the City of Austin Police Department, Austin Police Chief Stan

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

Knee, and Austin Police Officer Scott Glasgow (collectively, "Appellees"). Appellants filed suit after Officer Glasgow shot and killed their son on June 14, 2003. The district court dismissed Appellants' suit, and this appeal followed. For the reasons stated below, we affirm.

I.

On June 13, 2003, the Austin Police Department ("APD") notified its officers to "be-on-the-lookout" for a red Dodge Neon with license plate number T35-PNN, which had been reported stolen. APD officer Scott Glasgow observed the Neon while on routine patrol at about 1:20 a.m. on June 14th. He informed dispatch that he had located the Neon, began to follow it, but did not initiate a traffic stop. While Officer Glasgow was following the Neon, it pulled over to the side of the road without prompting from Officer Glasgow. The Neon's driver, later identified as Owens, brought the car to a complete stop but left the engine running. Officer Glasgow positioned his marked police car on the driver's side of the Neon. Fearing that Owens would attempt to flee on foot, Officer Glasgow exited his patrol car, drew his gun, and ordered Owens to put his hands up.

Officer Glasgow approached the driver's-side door of the Neon and unsuccessfully attempted to open it. He ordered Owens to open the door, and although Owens eventually complied, the door could not fully open because Officer Glasgow's patrol car impeded it. Officer Glasgow ordered Owens to keep his hands up and Owens complied, raising his hands in the area between the partially open door and the car. Officer Glasgow ordered Owens to get out of the car, but Owens refused and repeatedly asked, "What's the problem?"

Concerned that Owens might try to escape or reach for a weapon inside the vehicle, Officer Glasgow attempted to handcuff Owens's right hand by reaching over the top of the still partially-open driver's-side door. However, when Officer Glasgow reached for Owens's right hand, Owens pulled his right arm back into the vehicle. Officer Glasgow again ordered Owens to put his hands up

2

and not to move. Owens eventually put his hands up again, but then began to slowly reach further into the car with his right hand. Concerned that Owens was reaching for a concealed weapon, Officer Glasgow quickly reached over the top of the door with his left hand and tried to grab Owens. During this time Officer Glasgow continued to hold his gun in his right hand.

While Officer Glasgow's left arm, and possibly his right, were inside the car, Owens rapidly accelerated and Officer Glasgow's arms became trapped in the car. Officer Glasgow began to be dragged as a result.[1] While being dragged, Officer Glasgow fired six shots at Owens, five of which struck him. Officer Glasgow then lost control of his gun, which fell inside the Neon. He was then able to free himself from the moving car and he fell to the pavement. The Neon continued forward for a short distance, collided with a parked vehicle, and stopped. Officer Glasgow radioed to dispatch that shots had been fired.

The first backup officer to arrive discovered Officer Glasgow attempting to get up from the pavement. Shortly thereafter, Owens was removed from the Neon and medical personnel pronounced him dead. Officer Glasgow suffered relatively minor injuries, including bruises on each of his biceps, a sprained shoulder, and a hand contusion.

On April 26, 2005, Owens's parents filed suit against Officer Glasgow in his official and individual capacities, Austin Police Chief Stan Knee in his official and individual capacities, and the City of Austin Police Department. Their complaint alleged use of excessive force, assault and battery, murder, race discrimination, intentional infliction of emotional distress, and charged the City of Austin Police Department and Chief Knee with the negligent hiring, supervision, training, and retention of Officer Glasgow. Following discovery, the

---

[1] The parties dispute whether Owens held the door closed on Officer Glasgow's arms. However, it is immaterial whether Officer Glasgow's arms were trapped because Owens held the door or because of the forward momentum of the vehicle.

parties filed cross-motions for summary judgment. The district court granted the defendants' motion, finding that Officer Glasgow was entitled to qualified immunity, that the record contained no evidence that the City of Austin Police Department had a policy or custom of racial discrimination in the use of excessive force, and that Appellants failed to present evidence to support their other claims.

## II.

## A.

We review the district court's granting of summary judgment de novo, applying the same standards as a district court. Mack v. City of Abilene, 461 F.3d 547, 555 (5th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At the summary judgment stage, we typically view facts in the light most favorable to the nonmoving party, but only when "there is a 'genuine' dispute as to those facts." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007); see also Goodson v. City of Corpus Christi, 202 F.3d 730, 735 (5th Cir. 2000) ("[T]he nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." (internal quotation marks omitted)).

Appellants argue that a genuine factual dispute exists, making summary judgment inappropriate. "An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 454 (5th Cir. 2005) (internal quotation marks omitted). However, "it is well established that a nonmovant cannot overcome summary judgment with conclusory allegations and unsubstantiated assertions." Mace v. City of Palestine, 333 F.3d 621, 624 n.7 (5th Cir. 2003); see

also Johnston v. City of Houston, Tex., 14 F.3d 1056, 1060 (5th Cir. 1994) ("Only evidence—not argument, not facts in the complaint—will satisfy the burden." (internal quotation marks omitted)). Further, showing "some metaphysical doubt as to the material facts" will not create a genuine dispute. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-86 (1986)).

B.

The district court held that Officer Glasgow was entitled to qualified immunity on Appellants' claims. The doctrine of qualified immunity shields government officials from civil liability for performing discretionary functions "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Flores v. City of Palacios, 381 F.3d 391, 394 (5th Cir. 2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). We apply a two-part test to determine the applicability of qualified immunity. See Scott, 127 S. Ct. at 1774. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (quoting Sacier v. Katz, 533 U.S. 194, 201 (2001)); see McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (noting that at the summary judgment stage, the court looks not the facts alleged in the complaint, but to the "evidence before it"). If the answer is yes, we inquire "whether the defendants' conduct was objectively reasonable in light of clearly established law at the time of the alleged violation." Goodson, 202 F.3d at 736 (internal quotation marks omitted). Once a defendant "invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon, 305 F.3d at 323.

Appellants alleged that Officer Glasgow violated Owens's constitutional right to be free from the use of excessive force. Excessive force claims are analyzed under the Fourth Amendment and require the plaintiff to show (1) an injury, (2) that resulted directly and only from a use of force that was clearly

excessive, and (3) that the excessive force was objectively unreasonable. Flores, 381 F.3d at 396. The district court held that Officer Glasgow's use of deadly force was not objectively unreasonable given the fact that there was no genuine dispute that he was being dragged by Owens's vehicle at the time he shot Owens.

Based on our review of the record, we agree that no genuine dispute exists concerning whether Officer Glasgow was being dragged. Officer Glasgow's consistent accounts of the incident are supported by the physical evidence. The fact that Officer Glasgow's fingerprints and DNA were not found on the Neon's door is not inconsistent with his account, and does not suffice to create a genuine dispute about whether Officer Glasgow was dragged. Further, given the fact that he was being dragged by a moving vehicle, Officer Glasgow's use of force was not unreasonable. See Hathaway v. Bazany, --- F.3d ----, 2007 WL 3200413, at *5 (5th Cir. Nov. 1, 2007) (holding that deadly force is authorized when an officer is faced with "a credible, serious threat to the physical safety of the officer"). In sum, Appellants have failed to meet their burden to present evidence showing that Officer Glasgow's actions violated Owens's constitutional rights. Thus, he is entitled to qualified immunity.[2]

## C.

Regarding Appellants remaining claims, we have reviewed the record and the parties' arguments and we find no error in the district court's dismissal. Thus, we affirm for the reasons stated in the district court's well-reasoned Order.

AFFIRMED.

---

[2] We note that Officer Glasgow was reprimanded for failing to follow proper police procedures during this encounter. While we acknowledge that Officer Glasgow's failure to follow procedure created a dangerous situation, he is nonetheless entitled to qualified immunity if, at the instant he shot Owens, deadly force was reasonable. See Young v. City of Killeen, 775 F.2d 1349, 1353 (5th Cir. 1985).