**SUMMERCHASE LTD. PARTNER-SHIP I, et al.**

v.

**CITY OF GONZALES, et al.**

**Civil Action No. 94–2695–B–M2.**

United States District Court, M.D. Louisiana.

June 17, 1997.

Rodolfo Jesus Aguilar, Jr., Shannan Sweeney Rieger, Michael H. Rubin, McGlinchey, Stafford, Lang, Baton Rouge, LA, Eddie Douglas Austin, Jr., Lake Charles, LA, for plaintiffs.

Timothy Earle Pujol, Percy, Pujol, O'Brian & Wiley, James Conner Percy, R. Ryland Percy, III, Timmy J. Fontenot, Gonzales, LA, James Conner Percy, Baton Rouge, LA, Joseph C. Wiley, Gonzales, LA, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

### FACTS AND PROCEDURAL HISTORY [1]

Plaintiffs [2] filed this suit because defendants have refused to allow Summerchase to build an apartment complex [3] designed for low income inhabitants within the City of Gonzales, Parish of Ascension, State of Louisiana. Summerchase argues defendants' refusal to grant the building permits necessary for construction violates the following provisions of federal law: (1) the Fair Housing Act ("FHA"),[4] (2) the Fifth Amendment "takings" clause,[5] (3) procedural due process, and (4) substantive due process. After the suit was filed, defendants filed a motion for summary judgment seeking dismissal of all of plaintiffs' claims. The parties have fully briefed and argued the issues involved in this case. After considering the oral arguments presented by the parties and reviewing the entire record, defendants' motion for summary judgment is granted in part and denied in part.

### SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [6]

The well-established criteria that there must be no genuine issue of material fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of some alleged factual dispute." [7] In determining the "materiality" of facts it is necessary to refer to the underlying substantive law.[8] It is only those factual disputes that might affect the action's outcome under governing law which can properly preclude summary judgment. Disputes over facts which have no effect on the motion's resolution are irrelevant.[9] Even if a fact is material, a factual dispute will not prevent summary judgment if the dispute is not "genuine." Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a verdict for the non-moving party.[10] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[11]

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.[12] Where the moving party does not bear the burden of proof on the issue at trial, the movant may discharge its burden by simply informing the Court of the basis for its motion and either producing evidence that negates the existence of a ma-

---

1. The facts of this case are voluminous. In lieu of reciting the complex and detailed facts involved in this case, the Court will briefly summarize the dispute and will address the specific facts as needed in considering each of the arguments raised by the parties.

2. The plaintiffs in this case are Summerchase Limited Partnership I, Summerchase Limited Partnership II, Summerchase, L.L.C., and Stewart Juneau. Unless otherwise noted, the plaintiffs will be collectively referred to as "Summerchase."

3. The apartment complex will sometimes be referred to as the "Summerchase Development" or the "development."

4. 42 U.S.C. § 3601 et seq.

5. U.S. Const. amend. V.

6. FED. R. CIV. P. 56(c). See also *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Explora-*

*tion & Prod. Co.*, 969 F.2d 1559, 1560 (5th Cir. 1992).

7. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202(1986).

8. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

9. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

10. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. See also *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder [sic] could reasonably find in [favor of the non-moving party], then summary judgment is improper.")

11. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir.1993).

12. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

terial element in the non-moving party's claim *or* defense or identifying to the Court those portions of the record which demonstrate the lack of proof supporting a crucial element of the non-movant's case.[13]

Once the moving party makes the proper showing, the burden shifts to the non-moving party to designate "specific facts" in the record, by way of non-conclusory affidavits, depositions, answers to interrogatories or admissions on file, which evidence that there is a genuine issue for trial.[14] Because it bears the ultimate burden of proof at trial, the non-moving party is required to establish each element crucial to its action "since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily, renders all other facts immaterial."[15] The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings and "must do more than simply show there is some metaphysical doubt as to the material facts."[16] When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[17]

## LAW AND ANALYSIS

### (I) *Fair Housing Act Violations*

[1] Summerchase maintains the revocation of the building permit and the prevention of construction of the Summerchase Development by defendants was done with discriminatory intent and/or had a discriminatory effect in violation of the FHA. Specifically, Summerchase alleges defendants not only intended to discriminate against minorities and families with children, but the actions of defendants had the effect of discriminating against minorities and families with children. Defendants deny these allegations. As alleged by Summerchase, a

violation of the FHA may be shown either by proof of discriminatory intent or by a showing of "significant discriminatory effect."[18] The Court will first address the issue of discriminatory intent.

### (I) (A) *Discriminatory Intent*

Defendants contend Summerchase's complaint fails to provide fair notice of the FHA discriminatory, intent claim, and therefore, the FHA discriminatory intent claim should be dismissed. Defendants' contention is without merit. Summerchase's complaint adequately places defendants on notice of the FHA discriminatory intent claim in compliance with Rule 8 of the Federal Rules of Civil Procedure.

The Court also finds there are genuine issues of material fact in dispute which preclude the Court from granting defendants' motion for summary judgment on Summerchase's FHA claim that defendants intended to discriminate against minorities. However, defendants have clearly established their entitlement to summary judgment on Summerchase's claim that defendants intended to discriminate against families with children. Summerchase presented only scant, unconvincing, and unsupported evidence in opposition to defendants motion for summary judgment. Therefore, the Court grants defendants' motion for summary judgment with regard to Summerchase's FHA claim that defendants' intended to discriminate against families with children.

### (I)(B) *Discriminatory Effect*

■ Summerchase also alleges defendants' refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect against families with children and minorities. "The discriminatory effect of a rule arises in two contexts: adverse impact on a particular mi-

**13.** *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.,* 919 F.2d 301, 303 (5th Cir.1990); *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir. 1990).

**14.** *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Kelley v. Price–Macemon, Inc.,* 992 F.2d at 1413.

**15.** *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

**16.** *Matsushita Elec Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**17.** *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

**18.** *Simms v. First Gibraltar Bank,* 83 F.3d 1546, 1555 (5th Cir.1996).

nority group and harm to the community generally by the perpetuation of segregation." [19] In other words, discriminatory effect may be proven by either (1) a showing of disparate impact, or (2) a showing of segregative effect. The Court now turns to a discussion of the merits of the claims of discriminatory effect beginning with the discriminatory effect of defendants' actions on families with children.

### (I)(B)(1) *Discriminatory Effect on Families with Children*

Summerchase has presented little or no evidence of the disparate impact or segregative effect on families with children because of defendants' refusal to grant a permit necessary for the construction of the Summerchase Development. Defendants have established their entitlement to summary judgment on this claim as a matter of fact and law. Therefore, the Court grants summary judgment on defendants' claim that the refusal to grant Summerchase a permit necessary or the construction of the Summerchase Development has a discriminatory effect on families with children.

### (I)(B)(2) *Segregative Effect on Minorities*

The Court will next discuss the merits of Summerchase's claim that defendants' refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect because it has a disparate impact and a segregative effect on minorities. The Court will first discuss the merits of the disparate impact claim

### (I)(B)(1)(a) Disparate Impact On Minorities

■ "Under the disparate impact analysis, as other circuits have recognized, a prima facie case is established by showing that the challenged practice of the defendant actually or predictably results in racial discrimination; in other words that it has a discriminatory effect." [20] Once a prima facie case of disparate impact is made, the burden shifts to the defendant to "prove that its actions furthered, in theory and Ln practice, a legitimate bona fide [compelling] governmental interest and that no alternative would serve that interest with less: discriminatory effect." [21] In determining whether defendants' proffered reasons rise to the level of a compelling governmental interest, the Court must consider the following factors:

> first, whether the ordinance in fact furthers the governmental interest asserted; second, whether the public interest. served by the ordinance is constitutionally permissible and is substantial enough to outweigh the private detriment caused by it; and third, whether less drastic means are available whereby the stated governmental interest may be attained.[22]

■ In support of the their argument that there is no disparate impact on minorities in this case, defendants rely on statistics based solely on the population in the region eligible for the Summerchase Development.[23] Summerchase contends the Court should focus on the disproportionate effect on the entire population in the region, not just on the population eligible for the Summerchase Development.[24]

A summary of the evidence relied on by the parties is necessary for the Court to properly rule on the issue of whether the Court should utilize "absolute numbers" or "proportional numbers" in determining

---

**19.** *Huntington Branch NAACP v. Town of Huntington,* 844 F.2d 926, 938 (2d Cir.), *aff'd,* 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988) (citations omitted) *see also Metropolitan Housing Development v. Village of Arlington Heights,* 558 F.2d 1283, 1292 (7th Cir.1977), *cert, denied,* 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978).

**20.** *Huntington,* 844 F.2d at 934 (citations omitted).

**21.** *Huntington,* 844 F.2d at 936 (citing *Resident Advisory Board v. Rizzo,* 564 F.2d 126, 148–49 (3d Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978) ); *see also United*

*Farmworkers of Florida v. City of Delray Beach, Florida,* 493 F.2d 799, 809 (5th Cir.1974).

**22.** *United States v. City of Black Jack,* 508 F.2d 1179, 1186–87 (8th Cir.1974), *cert denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975), *reh. denied,* 423 U.S. 884, 96 S.Ct. 158, 46 L.Ed.2d 115 (1975) (citations omitted).

**23.** This is referred to as "absolute numbers" by the parties.

**24.** This is referred to as "proportional numbers" by the parties.

whether there is any disparate impact on minorities. The Court will first discuss the evidence of disparate impact on minorities based on "absolute numbers."

#### (I)(B)(2)(a)(i) *"Absolute Numbers"*

As stated above, "absolute numbers" are statistics based solely on the population in the region eligible for the Summerchase Development. The parties agree only those residents of Ascension Parish who live east of the Mississippi River ("East Ascension Parish residents") should be considered in determining disparate impact. The parties also agree the approximate range of income levels of prospective tenants, who are likely to choose to reside in the proposed Summerchase Development, are families or individuals earning between $5,000 and $16,153.[25] In summary, the eligible households constituting "93% of the market or demand for the [Summerchase Development] are households on the east bank of the [Mississippi River] in Ascension Parish earning between $5,000 and $16,153 per year." [26]

According to the 1990 United States Census, there are 3061 households in East Ascension Parish eligible for this project based upon income (i.e., households earning between $5,000 and $16,153). Of these households, 2,383 or 77.9% are white; 613 or 20.0% are black; and 65 or 2.1% are of other races.[27] Although Summerchase does not agree with the aforementioned percentages, Summerchase has offered no alternative percentages based on "absolute numbers" for the Court to consider. Thus, considering "absolute numbers," defendants claim that since whites are affected to a greater extent than minorities by an approximate 3 1/2:1 margin, there is no disparate impact on minorities by the refusal grant a permit necessary for the construction of the Summerchase Development.

#### (I)(B)(2)(a)(ii) *"Proportional Numbers"*

Summerchase seeks to have the Court ignore the "absolute numbers," and instead, use "proportional numbers." Again, "proportional numbers" focus on the number of households in the entire population of East Ascension Parish, whether or not the household is eligible for the proposed Summerchase Development. According to Franklin Kyle (defendants' expert) and based upon the above income parameters, 17.7% of the white households in East Ascension Parish are eligible for the development, and 29.7% of the black, households in East Ascension Parish are eligible.[28] In addition, of the population of Gonzales, Louisiana (which is located in East Ascension Parish) earning less than $16,153, 22.7% are white, and 43.6% are black.[29]

#### (I)(B)(2)(a)(iii) Legal Principles *"Absolute Numbers"* or *"Proportional Numbers"*

The Supreme Court has not considered the propriety of using "absolute numbers" or "proportional numbers" in evaluating disparate impact in a Title VIII (Fair Housing Act) case.[30] Many courts have held that, in

---

**25.** William Forrest, one of Summerchase's experts, opined that only households earning at least *$5,000* could afford to rent an apartment in the proposed Summerchase Development. Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Memo"), Exhibit 5 (Deposition of William Forrest), p. 190. In addition, Yale Rabin, another Summerchase expert, stated the maximum income a household may earn in order to qualify for the proposed Summerchase Development is $16,153. Defs.' Memo, Exhibit 6 (Deposition of Yale Rabin), p. 5.

**26.** Defs.' Memo at 5; Defs.' Memo, Exhibit 5 (Deposition of William Forrest), p. 214.

**27.** Defs.' Memo, Exhbit 4 (Affidavit of Franklin Kyle).

**28.** Defs.' Memo, Exhibit 4 (Affidavit of Franklin Kyle).

**29.** Summerchase relies on 1990 census data of the population of Gonzales, Louisiana earning less than $16,153, but does not exclude the percentage of the population earning less than $5,000 who could not afford to reside in the Summerchase Development. See Ptfs.' Memo, Exhibit T (Affidavit of Yale Rabin), Affidavit Exhibit K.

**30.** In *Huntington Branch NAACP v. Town of Huntington*, 844 F.2d 926, 938 (2d Cir.), *aff'd*, 488 U.S. 15, 109 S.Ct. 276, 102 L.Ed.2d 180 (1988), the court cited *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) for the assertion that "proportional numbers" must be used in evaluating disparate impact under Title VIII. *Griggs* is an employment discrimination case wherein the Supreme Court used "proportional numbers" in holding that the employment practices at issue had a disparate

evaluating disparate impact under Title VIII, it is appropriate to analogize to the disparate impact analysis under Title VII employment discrimination cases.[31] This Court agrees with the rationale of the Title VII cases and will use the factors set forth therein in deciding whether to rely on "absolute numbers" or "proportional numbers."

In determining whether to consider "absolute numbers" or "proportional numbers" in a Title VII employment discrimination case, the Supreme Court held the following:

> the 'proper comparison [is] between the racial composition of [the at-issue jobs] and the racial composition the qualified ... population in the relevant labor market.' It is such a comparison—between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs—that generally forms the proper basis for the initial inquiry in a disparate impact case.[32]

The Court in *Wards Cove* clearly focused only on the "qualified population in the relevant labor market." [33] In other words, the *Wards Cove* Court used "absolute numbers" because it concentrated solely on those people directly affected by hiring decisions.

Applying the *Wards Cove* factors to the facts of this case, the Court finds it should apply "absolute numbers" and focus solely on those households and individuals who meet the income parameters noted above, and are therefore, most likely to reside in the Summerchase Development. Whites, blacks, and other minorities, who are either not eligible

or not likely to live in the proposed development, are certainly not affected by defendants' decision to refuse to issue a permit necessary for the construction of the development.

In summary, the households or individuals who are either eligible or most likely to reside in the proposed development are residents of East Ascension Parish earning between $5,000 and $16,153 annually. Of these eligible or most likely residents, 77.9% are white, 20.0% are black, and 2.1% are of other races. Accordingly, utilizing "absolute numbers" (i.e., households or individuals eligible or most likely to reside in the proposed development), the Court finds there is no disparate impact on minorities since whites are affected at a ratio of approximately 3 1/2:1 over blacks and other minorities. Thus, the Court grants defendants' motion for summary judgment on the issue of whether defendants' refusal to grant the permit necessary for the construction of the Summerchase Development has a discriminatory effect because it has a disparate impact on minorities.

#### (I)(B)(2)(b) *Segregative Effect On Minorities*

Summerchase may also show defendants' refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect on minorities, in violation of the FHA, by proving the decision has a segregative effect. Defendants contend Summerchase's complaint does not provide fair notice of the "segregative effect" claim in violation of Rule 8 of

---

impact on minorities. However, the *Griggs* Court never stated that "proportional numbers" must be used in making this determination. In fact, in the same *Huntington* case, the Supreme Court stated that it did not "endorse the precise analysis of the Court of Appeals" in arriving at the decision to use "proportional numbers." *Huntington Branch NAACP*, 488 U.S. at 18, 109 S.Ct. at 277.

**31.** *Pfaff v. U.S. Dept. of HUD*, 88 F.3d 739, 745 n. 1 (9th Cir.1996) ("We may look for guidance to employment discrimination cases."); *Huntington Branch NAACP*, 844 F.2d at 934–935 (citations omitted) (Title VII analysis is persuasive in interpreting Title VIII.); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 730–32, 115 S.Ct. 1776, 1780, 131 L.Ed.2d 801, 808–09 (1995) (reasoning by analogy from Title VII case);

*Mountain Side Mobile Est. Pts. v. Sec. of HUD*, 56 F.3d 1243, 1251 n. 7 (10th Cir.1995) ("We look to Title VII employment discrimination cases for guidance with regard to Title VIII housing discrimination claims."); *Betsey v. Turtle Creek Assoc.*, 736 F.2d 983, 987 (4th Cir.1984) (citations omitted) ("We and other courts of appeals have recognized the parallel objectives of title VII and Title VIII").

**32.** *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650, 109 S.Ct. 2115, 2121, 104 L.Ed.2d 733 (1989) (quoting *Hazelwood School Dist. v. United States*, 433 U.S. 299, 308, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977)).

**33.** *Wards Cove*, 490 U.S. at 650, 109 S.Ct. at 2121.

the Federal Rules of Civil Procedure. Defendants' contention is without merit as Summerchase's complaint puts defendants on notice of the "segregative effect" claim in compliance with Rule 8 of the Federal Rules of Civil Procedure.

The Court also finds there are genuine issues of material fact in dispute which preclude the Court from granting defendants' motion for summary judgment on Summerchase's claim that defendants' refusal to grant a permit necessary to construct the Summerchase Development has a discriminatory effect because it has a segregative effect on minorities.

### (I)(C) *FHA Claims—Summary and Conclusion*

In summary, the Court grants defendants' motion for summary judgment on the following claims:

1. The refusal to grant a permit necessary for the construction of the Summerchase Development was done with the intent to discriminate against families with children.

2. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect on families with children.

3. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect because it has a disparate impact on minorities

The Court denies defendants' motion for summary judgment on the following claims:

1. The refusal to grant a permit necessary for the construction of the Summerchase Development was done with the intent to discriminate against minorities.

2. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discrimi-

natory effect on minorities because it has a segregative effect,

### (II) *Due Process Claims Under 42 U.S.C. § 1983*

In addition to the FHA claims, Summerchase asserts various due process claims pursuant to 42 U.S.C. § 1983. Defendants filed a motion for summary judgment seeking to dismiss these claims. Before addressing the merits of Summerchase's due process claims, a brief recitation of the facts is necessary.

In early 1994, Summerchase began scouting for property in the City of Gonzales, Louisiana for the purpose of building multi-unit residential housing. On or about March 8, 1994, representatives of Summerchase inquired of the City Clerk, Terry Tripp, whether the property in dispute was properly zoned for multi–unit residential housing, and City Clerk Tripp informed Summerchase's representatives that the property was zoned C–1 "Limited Commercial District," and that multi–unit residential housing could be constructed in a C–1 zone.[34] Summerchase representatives also met with the Mayor of Gonzales, Louisiana, John Berthelot, to present the proposed development. Mayor Berthelot allegedly expressed support for the project and noted the City of Gonzales, Louisiana needed such a development.[35] On April 11, 1994, Summerchase executed a purchase agreement for the purchase of the property.

The Summerchase Development was presented to the Planning & Zoning Commission (the "Commission") on June 7, 1994. Tripp, in his official capacity as City Clerk, represented to the members of the Commission that the property was properly zoned for a multi-unit residential development; thereafter, the Commission voted to recommend approval of the building permit to Summerchase.[36] The Board of Aldermen approved the issuance of the building permit to Summerchase for Phase I of the development at

---

**34.** Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment ("Ptfs.' Memo"), Exhibit B (Deposition of Terry Tripp) p. 13.

**35.** Ptfs.' Memo, Exhibit C (Deposition of Dodds), p. 30 and Exhibit D (Affidavit of Stewart Juneau).

**36.** Ptfs.' Memo, Exhibit H (Minutes of the June 7, 1994 Commission meeting); Exhibit B (Deposition of Tripp), p. 45–47.

their June 13, 1994 meeting.[37] After obtaining approvals from the Building Inspector (Earl Lanoux), the Fire Chief (James C. Walker), and the Utilities Supervisor (Dr. Kenneth Copes), the building permit for Phase I was issued to Summerchase on August 9, 1994.[38] The purchase agreement on the property was completed, and title to the property was transferred to Summerchase on August 16, 1994.[39]

During a Board of Aldermen meeting held on September 12, 1994, the Board of Aldermen revoked the building permit for Phase I of the development.[40] Three reasons were given for revoking the permit. First, the board of Aldermen found the permit was not properly issued because Summerchase did not actually own the disputed property when the building permit was issued. Second, the Board of Aldermen found the permit was improperly issued because the property was not zoned for multi-unit residential housing. Third, the Board of Aldermen was concerned the Summerchase Development may cause sewer problems for the City of Gonzales, Louisiana.

On September 13, 1994, Summerchase attempted to submit an application for a building permit regarding Phase II of the development, and City Clerk Tripp refused to accept the application. Summerchase believes City Clerk Tripp refused to accept the application upon instruction of Mayor Berthelot. On September 20, 1994, Summerchase submitted a second application for a building permit for Phase II of the development by certified mail and return receipt, but the application was not accepted.[41]

During a Board of Aldermen meeting held on September 26, 1994, Mayor Berthelot proposed and the Board of Aldermen passed a complete moratorium on the building of multi-unit residential housing in the City of Gonzales, Louisiana until a study of the development of the City of Gonzales, Louisiana could be completed.[42]

On October 5, 1995, Summerchase sought to change the zoning of the disputed property to allow for the construction of multi-unit residential housing. On October 9, 1995, the Board of Aldermen voted not to consider the zoning request filed by Summerchase.

Based on the above facts, Summerchase has asserted numerous due process claims. First, Summerchase alleges it suffered a "compensatory taking" when the Board of Aldermen revoked the building permit for Phase I of the development. Second, Summerchase contends its right to procedural due process was violated in the following manner: (1) Summerchase had no prior notice that their permit would be revoked at the September 12, 1994 Board of Aldermen meeting, (2) Summerchase was not given notice or a hearing regarding the moratorium on construction of multi-unit residential housing implemented by the Board of Aldermen; and (3) defendants refused to accept and process building permit applications without legal authority. Third, Summerchase asserts the various decisions of defendants, which had the effect of refusing to allow Summerchase to proceed with the development, were "arbitrary, discriminatory, and unlawful" in violation of Summerchase's due process rights.[43] The Court now turns to a discussion of the merits of the alleged due process violations in the order set forth above.

### (II)(A) *"Compensatory Taking"*

As defendants have argued with Summerchase's other claims, defendants contend they

---

**37.** Ptfs.' Memo, Exhibit I (Minutes of June 13, 1994 meeting) Exhibit B (Deposition of Tripp) at 57–62.

**38.** Ptfs.' Memo, Exhibit J (Deposition of James C. Walker), p.–6; Exhibit K (Deposition of Earl Lanoux), p. 10–17.

**39.** Ptfs.' Memo, Exhibit L (Summerchase's Deed of Acquisition).

**40.** Ptfs.' Memo, Exhibit M (Minutes of the September 12, 1994 Board of Aldermen Meeting).

**41.** Ptfs.' Memo, Exhibit O (Copy of Return Receipt).

**42.** Ptfs.' Memo, Exhibit P (Minutes of the September 26, 1994 Board of Aldermen Meeting).

**43.** Regarding the third due process claim, the Court is uncertain whether Summerchase is asserting a substantive or procedural due process claim; therefore, the Court will address the merits of both.

did not have fair notice of the "takings" claim due to deficiencies in Summerchase's complaint. Defendants' contention is without merit. Summerchase has adequately placed defendants on notice of the "takings" claim in compliance with Rule 8 of the Federal Rules of Civil Procedure.

■ Summerchase's allegation of a "taking" stems from the revocation of the building permit issued to Summerchase for Phase I of the development, the refusal by defendants to accept subsequent permit applications, and the enactment of the moratorium on multi-unit residential housing within the City of Gonzales, Louisiana. Summerchase contends "[t]his is a case where the government imposed restrictions ... have gone too far," [44] and deprived Summerchase of its investment backed expectations for the property because it may not proceed with any facet of the development.

Defendants counter there can be no "taking" because Summerchase did not have a property interest in the building permit. Defendants argue that, under the Gonzales Zoning Code, multi-unit residential housing may not be constructed in a C–1 "Limited Commercial District" zone. Since the property is not properly zoned for the Summerchase Development, defendants contend Summerchase must either have the property rezoned or obtain a special permit.[45] Since Summerchase did not have the property rezoned, defendants claim the building permit issued to Summerchase is without effect because a "regular" building permit is insufficient, under the Gonzales Zoning Code, to authorize construction of a development out of zone. Defendants also assert that, since Summerchase does not have a special permit authorizing construction of the development out of zone, Summerchase has no property interest which may be subject to a "compensatory taking."

Finally, defendants contend Summerchase has admitted that the Summerchase Development may not be built without a special permit. In paragraphs 23 and 52 of Summerchase's "First Amended, Supplemental and Restated Complaint." Summerchase states the Gonzales Zoning Code does not provide any area of the city on which a multistory multi-family residential development could be built, without a special permit. Summerchase contends paragraphs 23 and § 2 should be read in conjunction with the surrounding paragraphs, and that Summerchase is merely restating defendants' defenses. While the complaint may not have been carefully worded, the Court concludes Summerchase did not intend to admit that a special permit is required to build the Summerchase Development. Instead, the Court finds Summerchase was merely attempting to restate one of defendants' defenses.

Turning to the merits of the "takings" claim, the Gonzales Zoning Code plainly states a "special permit" is necessary to build a development outside of the appropriate zone.[46] The question that remains to be decided is whether a multi-unit residential housing development may be built in a C–1 zone. If it can be, then Summerchase has a property interest in the building permit which it was issued. If multi-unit residential housing may not be built in a C–1 zone, then Summerchase has no property interest because, under the Gonzales Zoning Code, a special permit is required before a project, such as the Summerchase Development, may be constructed out of zone.

A careful reading of the Gonzales Zoning Code reveals the intent of the redactors was that buildings in a C–1 "Limited Commercial District" would be utilized for "retail sales." [47] The "permitted principal uses and structures" within a C–1 zone are defined in the Gonzales Zoning Code, § 22–10(c).[48] Multi-unit residential housing, such as the Summerchase Development, is not permitted under the C–1 zoning classification. As such,

---

44. Ptfs.' Memo at 44.

45. Ptfs.' Memo, Exhibit F (Gonzales Zoning Code), §§ 22–22, 22–23.

46. Defs.' Memo, Exhibit F (Gonzales Zoning Code), § 22–23.

47. Ptfs.' Memo, Exhibit F (Gonzales Zoning Code) § 22–10(c)(1)(a).

48. Ptfs.' Memo, Exhibit F (Gonzales Zoning Code).

Summerchase is required to have a special permit in order to construct the Summerchase Development. Since Summerchase has never obtained a special permit, Summerchase has no property interest which may be subject to a "compensatory taking."

■ Summerchase counters defendants have no legal authority under the Gonzales Zoning Code, or in any other ordinance, to revoke the permit. However, Louisiana courts have held that " '[t]he mere fact that a building permit was issued in error and contrary to the laws of the City does not vest an irrevocable right to proceed under that permit contrary to subsequent action canceling the permission previously given.' " [49] In *Cross* and in this case, "[l]egal precedent clearly establishes the Board's right to revoke the permit." [50]

Since the Board of Aldermen has the right to revoke the permit because it was erroneously issued, Summerchase has no vested property interest in the permit. Therefore, Summerchase has no "takings" claim under the facts of this case. Even if Summerchase has a property interest in the building permit, the property interest is worthless to Summerchase because the building permit does not entitle Summerchase to build the Summerchase Development. The building permit would have only allowed Summerchase to construct a building in compliance with the C–1 zoning restrictions. It is clear Summerchase must have a special permit, under the Gonzales Zoning Code before it may build the Summerchase Development in a C–1 zone. Summerchase did not have such a permit. Accordingly, defendants' motion for summary judgment is granted with regard to the "takings" claim.

### (II)(B) *Procedural Due Process*

■ Summerchase's procedural due process arguments are summarized above,

and will not be recounted again here. "In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty or property interest protected by the Fourteenth Amendment, and then identify a state action that resulted in a deprivation of that interest." [51] Furthermore, "whether a property interest exists must be determined by reference to state law." [52]

### (II)(B)(1) *Revocation of the Building Permit*

■ As the Court has found above, Summerchase has no property interest in the building permit revoked by the Board of Aldermen. Accordingly, defendants' motion for summary judgment with regard to the alleged violation of procedural due process due to the revocation of the building permit without notice and/or a hearing is granted.

### (II)(B)(2) *Moratorium*

■ During a September 26, 1994 meeting of the Board of Aldermen of the City of Gonzales, Louisiana, a moratorium on the issuance of building permits for multi-unit residential housing within the City of Gonzales, Louisiana was enacted, The moratorium is to last until the completion of a City of Gonzales land use study. [53] The land use study is expected to be completed in December of 1996. [54] Summerchase alleges it did not receive notice or a hearing with regard to the moratorium in violation of its procedural due process.

To establish a procedural due process violation, Summerchase must be deprived of a vested property right to build multi-unit residential housing by the imposition of the moratorium. Since Summerchase has no such vested property interest, Summerchase was

**49.** *Cross v. City of New Orleans*, 446 So.2d 1253, 1254 (La.App. 4th Cir.), *writ denied*, 449 So.2d 1359 (La.1984) (citing *Nassau Realty Co. v. City of New Orleans*, 221 So.2d 327 (La.App. 4th Cir.1969)).

**50.** *Cross*, 446 So.2d at 1254.

**51.** *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir.1995).

**52.** *Amedee v. Litchfield*, 673 F.Supp. 783, 784 (M.D.La.1987); *see also Schaper v. City of Huntsville*, 813 F.2d 709, 713 (5th Cir.1987).

**53.** Defs.' Memo at 2.

**54.** Defs.' Memo at p. 14.

not deprived of a property interest by the moratorium. Thus, summary judgment on this issue is granted.

#### (II)(B)(3) *Refusal to Process Applications*

■ After the September 12, 1994 meeting of the Board of Aldermen in which the Board revoked Summerchase's building permit, defendants refused to accept or process any applications for building permits submitted by Summerchase. Summerchase asserts defendants' refusal to accept or process a building permit violates its procedural due process rights. A holding that an applicant for a building permit must be given notice and/or a hearing for the purpose of determining whether to accept or reject an application for a building permit would stretch the requirements of due process further than this Court is willing to do. In addition, the Board of Aldermen has the authority to revoke building permits which have been erroneously issued. Defendants' motion for summary judgment on this issue is granted.

#### (II)(C) *Actions by Defendants Were Arbitrary—Substantive Due Process Claim or Procedural Due Process Claim?*

The last claim made by Summerchase under § 1983 is that defendants violated their due process rights due to the alleged "arbitrary, discriminatory, and unlawful methods by which Summerchase was prevented from pursuing construction of the complex."[55] The "methods" in dispute are the revocation of the building permit, the moratorium, and the refusal to process any permit applications.

■ The Court is uncertain whether Summerchase is alleging a violation of substantive due process or procedural due process. The essence of a substantive due process claim is that a decision by a governmental body is " 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' "[56] In its complaint, Summerchase alleges the decision was "arbitrary, discriminatory and unlawful." Furthermore, if a local zoning decision is deemed an "arbitrary action," there may also be a procedural due process violation.[57] Since it is unclear from the complaint and the briefs what claim is being asserted, the Court will address both the substantive and procedural due process issues.

#### (II)(C)(1) *Arbitrary Decision— Substantive Due Process*

[15, 16] The Fifth Circuit notes " 'that review of municipal zoning is within the domain of the states, the business of their own legislatures ... and should seldom be the concern of federal courts.' "[58] "Nonetheless, when challenges to such land-use decisions aspire to constitutional. stature, we view those decisions as 'quasi-legislative' in nature, and thus sustainable against a substantive due process challenge if there exists therefor 'any conceivable rational basis.' "[59] "In other words, such government action comports with substantive due process if the action is rationally related to a legitimate government interest."[60] "Only if such government action is 'clearly, arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare,' may it be declared unconstitutional."[61]

---

55. Defs.' Memo at pp. 35–36.

56. *FM Properties Op. Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)).

57. *Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir.1989).

58. *FM Properties*, 93 F.3d at 173–74 (quoting *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir.) (en banc), *certs. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 and 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986)).

59. *FM Properties*, 93 F.3d at 174 (citations omitted).

60. *FM Properties*, 93 F.3d at 174 (citations omitted).

61. *FM Properties*, 93 F.3d at 174 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)); *see also Texas Manufactured Housing Ass'n v. City of Nederland*, 101 F.3d 1095, 1105 (5th Cir.1996).

 With regard to the reasons proffered by defendants for revoking the permit, enacting the moratorium, and refusing to accept any more permit applications, the only question the Court must decide is " 'whether a rational relationship exists between the [policy] and a conceivable legitimate governmental objective.' " [62] "If the question is at least debatable, there is no substantive due process violation." [63] "[T]he 'true' purpose of the [policy], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis.' " [64]

The "legitimate governmental objective" of the City of Gonzales, Louisiana, underlying the disputed decisions listed above, is that the City of Gonzales, Louisiana should undergo an extensive land use study to facilitate land use planning in the future before significant further developments involving multi-unit residential housing are allowed to proceed. Furthermore, defendants contend these disputed decisions are rationally related to this objective. Summerchase alleges that defendants' purported rational basis for the revocation, the moratorium, and the refusal to accept further applications for building permits is merely a pretext to mask arbitrary, discriminatory, and unlawful action that renders the decisions unconstitutional.

The Court concludes that because it is at least "debatable" that revoking Summerchase's building permit, imposing a moratorium on future multi-unit residential housing, and refusing to accept further building permits is essential to the facilitation of land use planning in the future, there is a rational basis between these disputed decisions and the "legitimate governmental objective." As stated in *FM Properties*, "the 'true' purpose of the [policy] is irrelevant for rational basis analysis.' " [65] Thus, defendants' motion for summary judgment is granted with regard to this issue.

### (II)(C)(2) *Arbitrary Decision— Procedural Due Process*

**[19–21]** The dispositive inquiry here is whether the [revocation,] moratorium[, and the refusal to accept further building permit applications] was a legislative or administrative action. If it was administrative, [Summerchase] might have been owed some level of procedural due process. However, it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply.[66]

"A local zoning decision is 'a 'quasi-legislative' procedure, not subject to federal juridical consideration in the absence of arbitrary action.' " [67] In other words, "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." [68]

In deciding what is a legislative and what is an administrative decision, the Fifth Circuit holds that

> Conduct of a municipal body is likely to be deemed legislative when an elected group, such as a city council, makes a general zoning decision which applies to a large group of interests. Conversely, a municipal body's action may be more likely termed adjudicative if an appointed group,

---

**62.** *FM Properties,* 93 F.3d at 174–75 (quoting *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 907 F.2d 239, 246 (1st Cir. 1990)); *see also Nederland,* 101 F.3d at 1105.

**63.** *FM Properties,* 93 F.3d at 175 (citations omitted); *see also Nederland,* 101 F.3d at 1105.

**64.** *FM Properties,* 93 F.3d at 174 (quoting *Smithfield Zoning,* 907 F.2d at 246)).

**65.** *FM Properties,* 93 F.3d at 174 (quoting *Smithfield Zoning,* 907 F.2d at 246)).

**66.** *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070, 1074 (5th Cir.1989) (citations omitted).

**67.** *Jackson Court,* 874 F.2d at 1074 (quoting *South Gwinnett v. Pruitt,* 491 F.2d 5, 7 (5th Cir.) (en banc), *certs. denied,* 416 U.S. 901, 94 S.Ct. 1625, 40 L.Ed.2d 119 and 419 U.S. 837, 95 S.Ct. 66, 42 L.Ed.2d 64 (1974)).

**68.** *County Line Joint Venture v. City of Grand Prairie, Texas,* 839 F.2d 1142, 1144 (5th Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 223, 102 L.Ed.2d 214 (1988) (quoting 2 R. Rotunda, J. Nowak & J. Young, Treatises on Constitutional Law: Substance and Procedure, § 17.8, p. 251 (1986)).

such as a zoning board, makes a specific decision regarding a specific piece of property.[69]

After reviewing the facts of this case, the Court finds there are genuine issues of material facts in dispute regarding the issue of whether the disputed decisions this case are legislative or administrative. The evidence presented by the parties reveals that after the moratorium was enacted by the Board of Aldermen, a multi-unit residential housing complex for the elderly was approved and built within the City of Gonzales, Louisiana.[70] The project was named Azalea Estates and is characterized by Summerchase as "an upscale apartment complex for elderly citizens."[71] If the "general class of persons" affected are persons seeking to build multi-unit residential housing in the City of Gonzales, Louisiana, the Azalea Estates development may have to be included. However, there is insufficient evidence in the record at this time for the Court to conclude that the Azalea Estates development should be included in the "general class of persons" affected or not. Therefore, defendants' motion for summary judgment is denied with respect to this issue.

### (II)(D) *Due Process Claims under 42 U.S.C. § 1983—Summary and Conclusion*

In summary, the Court grants defendants' motion for summary judgment on the following due process claims:

1. The revocation of the building permit, the moratorium, and the refusal to accept permit applications by the Board of Aldermen constitutes a "compensatory taking"

2. The revocation of the building permit by the Board of Aldermen is a violation of procedural due process.

3. The imposition of the moratorium by the Board of Aldermen is a violation of procedural due process.

4. The refusal to process applications by the City Clerk is a violation of procedural due process.

5. The decisions by the Board of Aldermen to revoke the building permit, impose the moratorium, and to refuse to process permit applications are arbitrary, discriminatory, and unlawful decisions in violation of substantive due process.

Because there are genuine issues of material fact in dispute, the Court denies defendants' motion for summary judgment on the issue of whether the decisions by the Board of Aldermen to revoke the building permit, impose the moratorium, and to refuse to process permit applications are arbitrary, discriminatory and unlawful decisions in violation of procedural due process.

### (III) *Legislative Immunity: Defendants— Dragg, Marchand, and Gordon*

Defendants argue the Board of Aldermen members, some of whom are named as defendants, possess either absolute or qualified immunity from suit.[72] The Court will first address the issue of absolute immunity.

### (III)(A) *Absolute Immunity*

Regional and local legislators are absolutely immune from suit under 42 U.S.C. § 1983 for actions which are defined as "legislative duties."[73] Three of the defendants in this case are members of the City of Gonzales Board of Aldermen, and therefore, are absolutely immune from suit for actions defined as "legislative duties." However, "[n]ot all actions taken by an official with legislative duties are protected by absolute immunity—only those duties that are func-

---

69. *County Line*, 839 F.2d at 1144.

70. Defs.' Memo, Exhibit R (Minutes of November 7, 1994 and December 5, 1994 meetings of Planning & Zoning Commission and December 12, 1994 minutes of the meeting of the Board of Aldermen).

71. Defs.' Memo at 8.

72. The three Board of Aldermen members who are defendants in this case are Alvin J. Dragg, Dalton J. Marchand, and Frank Gordon.

73. *Hughes v. Tarrant County Texas*, 948 F.2d 918, 920 (5th Cir.1991) (citations omitted).

tionally legislative." [74] In other words, only legislative acts are entitled to absolute immunity, while non-legislative or administrative acts are only entitled to qualified immunity.[75]

The Fifth Circuit has set forth two different tests for determining whether the actions of a legislator are legislative duties or administrative duties. The first test considers whether

> the underlying facts on which the decision is based are 'legislative facts,' such as generalizations concerning policy or state of affairs....' If the facts used in the decision-making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the 'particularity of the impact of the state action.' If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.[76]

Stated differently, when an ordinance is "passed in an effort to facilitate enforcement of existing zoning laws, [and] not to facilitate enactment or amendment of new zoning laws involving broad-based policy or line-drawing determinations[,]" then the action is administrative in nature and not protected by absolute legislative immunity.[77] "When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity." [78]

The issue in this case is whether the Board of Aldermen members, who were named as defendants, are absolutely immune from the FHA claims and the due process violations that survived dismissal on summary judgment. The disputed actions involving the Board of Aldermen are the revocation of the building permit, the moratorium on construction of multi-unit residential housing, and the refusal to accept permit applications.

The Court reviewed the case law considering similar issues, and the following cases are noteworthy. In *Crymes v. DeKalb County*, the Eleventh Circuit held the denial of a development permit by the county commissioners was an act of "zoning enforcement rather than rulemaking," and that the "decision to deny ... [an] application is the application of policy to a specific party;" therefore, the county commissioners were denied absolute legislative immunity.[79] In *Acierno v. Cloutier*, the county council passed two ordinances which rezoned a specific piece of property, and voided an approved record development plan. The Third Circuit held the rezoning ordinance was subject to legislative immunity because it involved "broad-based policy or line-drawing determinations." [80] The *Acierno* court also held the voidance of the development permit was not subject to absolute immunity because it was administrative in nature and involved the enforcement of existing zoning laws.[81] In *Scott v. Greenville County*, the Fourth Circuit held there is no absolute legislative immunity when a county council refuses to process a building permit.[82] In *Brown v. Crawford County*, the Eleventh Circuit held that "[b]y enacting a temporary moratorium of general application on issuing mobile home permits for a specified area of Crawford County until a revised zoning development plan could be reviewed, the individual county commissioners were performing a traditional legislative function," and were protected by absolute legislative

**74.** *Hughes*, 948 F.2d at 920 (citing *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 135 (5th Cir.1986)).

**75.** *Hughes*, 948 F.2d at 920.

**76.** *Hughes*, 948 F.2d at 921 (quoting *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984) (citing Developments in the Law–Zoning, 91 Harv. L.Rev. 1427, 1510–11 (1978))).

**77.** *Acierno v. Cloutier*, 40 F.3d 597, 612 (3d Cir. 1994).

**78.** *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir.1983).

**79.** 923 F.2d 1482, 1485 (11th Cir.1991).

**80.** *Acierno*, 40 F.3d at 612.

**81.** *Acierno*, 40 F.3d at 615.

**82.** *Scott*, 716 F.2d at 1423.

immunity.[83]

■ Based on a review of the case law in this area, the Court concludes the actions of the Board of Aldermen, in revoking the building permit and refusing to accept further building applications, are not covered by absolute legislative immunity because each involves the enforcement of existing zoning laws and affects specific individuals—namely, Summerchase.

■ With regard to the moratorium on construction of multi-unit residential housing until a land use study could be completed, the Court finds such a temporary moratorium is a legislative function because it involves "broad-based policy" considerations involving the future development of the City of Gonzales, Louisiana and would apply similarly to all individuals. Thus, the Board of Aldermen members should be protected by absolute immunity for enacting the moratorium. However, the Court must consider the Azalea Estates development. As previously noted, there is insufficient evidence in the record to conclude whether the Azalea Estates development should be considered multi-unit residential housing of the type subject to the moratorium. Accordingly, the Court finds there are genuine issues of material fact in dispute as to whether the moratorium applies across the board to all individuals seeking to build multi-unit residential housing, or was applied specifically against Summerchase.

In conclusion and for the forgoing reasons, the Court denies defendants' motion for summary judgment on the basis that the Board of Aldermen members are protected by absolute legislative immunity. The Court will now turn to the defense of qualified immunity.

### (III)(B) *Qualified Immunity*

■ claim the Board of Aldermen are protected from suit by qualified immunity. "Government officials performing discretionary functions are entitled to qualified immunity from suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." [84] "Qualified immunity has ... been recognized to protect 'all but the plainly incompetent or those who knowingly violate the law.' " [85] "Whether a government official is entitled to qualified immunity 'generally turns on the objective reasonableness of the action assessed in light, of the legal rules that were 'clearly established' at the time it was taken.' " [86]

"The first step 'is the determination of whether the plaintiff has asserted a violation of a [statutory or] a constitutional right at all." [87] The "second step is to determine whether the [statutory or] constitutional right that [has been] allegedly violated was clearly established at the time of the alleged violation." [88] " 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right.' " [89] "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." [90] " 'Thus, qualified immunity does not apply if 'reasonable officials in defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be unlawful.' " [91]

---

**83.** 960 F.2d 1002, 1012 (11th Cir.1992).

**84.** *Gunaca v. State of Texas,* 65 F.3d 467, 473 (5th Cir.1995).

**85.** *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir.1994) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

**86.** *Johnston,* 14 F.3d at 1059 (quoting *Texas Faculty Ass'n v. University of Texas at Dallas,* 946 F.2d 379, 389 (5th Cir.1991)) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)).

**87.** *Johnston,* 14 F.3d at 1060 (citations omitted).

**88.** *Gunaca,* 65 F.3d at 474.

**89.** *Johnston,* 14 F.3d at 1059 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

**90.** *Johnston,* 14 F.3d at 1059 (citing *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir. 1990)).

**91.** *Acierno,* 40 F.3d at 616 (quoting *Abdul–Akbar v. Watson,* 4 F.3d 195, 202 (3d Cir.1993)) (quoting *Good v. Dauphin County Social Servs. for Children and Youth,* 891 F.2d 1087, 1092 (3d Cir.1989)).

The Court concludes the FHA claims and due process claims, which have survived summary judgment above, are clearly established statutory and/or constitutional rights.[92] Therefore, the Court must deny the motion for summary judgment based on the contention that the three defendants, Dragg, Marchand, and Gordon, are entitled to qualified immunity as members of the City of Gonzales Board of Aldermen.

### (IV) *Liability of Mayor Berthelot and City Clerk Tripp*

Defendants contend Summerchase's claims focus on the revocation of the building permit and the passage of the moratorium. Moreover, defendants further insist both actions were taken by vote of the City of Gonzales Board of Aldermen, and that neither Mayor Berthelot or City Clerk Tripp have the authority to vote as members of the Board of Aldermen. Accordingly, defendants aver that neither Mayor Berthelot or City Clerk Tripp can be held liable in their individual capacities for the FHA and due process claims brought by Summerchase.

### (IV)(A) *FHA Claims—Liability of Berthelot and Tripp*

Summerchase argues that, based on 42 U.S.C. § 3617,[93] Mayor Berthelot and City Clerk Tripp may be held personally liable for the alleged FHA violations. Because there are genuine issues of material fact in dispute as to whether Mayor Berthelot and City Clerk Tripp "interfered with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604 . . ." pursuant to 42 U.S.C. § 3617, defendants' motion for summary judgment on this issue is denied at this time.

### (IV)(B) *Due Process Claims—Liability of Berthelot and Tripp*

■ The remaining procedural due process claim, which was not dismissed above, is based on the alleged arbitrary, discriminatory, and unlawful decisions of the Board of Aldermen to revoke the building permit, impose the moratorium, and to refuse to process permit applications. Clearly, the decision to revoke the building permit and to impose the moratorium involved only actions of the Board of Aldermen, and did not involve Mayor Berthelot or City Clerk Tripp. Therefore, Mayor Berthelot and City Clerk Tripp are entitled to summary judgment on these two claims.

■ Insofar as the decision not to process permit applications submitted by Summerchase, there is evidence in the record that Mayor Berthelot may have instructed City Clerk Tripp not to accept these applications. Thus, it is possible the Board of Aldermen was not solely responsible for the refusal to accept permit applications. Thus, summary judgment must be denied insofar as this claim is concerned.

### (IV)(C) *Summary and Conclusion—Mayor Berthelot and City Clerk Tripp*

In summary, the motion of Mayor Berthelot and City Clerk Tripp for summary judgment regarding their respective liability for the remaining FHA claims is denied. In addition, the motion of Mayor Berthelot and City Clerk Tripp for summary judgment with regard to the alleged violation of procedural due process involving the decision by the Board of Aldermen to revoke the permit and to impose the moratorium is granted. Finally, the motion by Mayor Berthelot and City Clerk Tripp for summary judgment with re-

---

**92.** In *Meadowbriar Home for Children v. G.B. Gunn,* 81 F.3d 521, 530 (5th Cir.1996), the Fifth Circuit held that in December 1989 and January 1990, "it was not clearly established . . . that the FHA extended personal liability to the conduct of municipal officials who were not involved in the selling or renting of property, and who did not have decision-making authority." Conversely, as of December 1989, it was clearly established that the FHA extended personal liability to Municipal officials, such as Dragg, Marchand and Gordon, who were directly involved and had decision—making authority.

**93.** 42 U.S.C. § 3617 states as follows:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

gard to alleged violation of procedural due process involving the decision to refuse to accept permit applications is denied.

### (V) *Conclusion*

The Court has attempted to discuss each of the claims asserted by the parties. Because of the numerous claims and defenses, it is possible that not all of the arguments of the parties were set forth in this written ruling. However, whether specifically discussed herein or not, all arguments were carefully considered by the Court in reaching its decision. Further proceedings shall be conducted only on the claims surviving defendants' motion for summary judgment.

### (VI) *Cumulative Summary of Court's Ruling*

The following is a summary of the Court's ruling on the various claims asserted in this case:

A. *Fair Housing Act Violations*

1. The Court grants defendants' motion for summary judgment on the following FHA claims:
 a. The refusal to grant a permit necessary for the construction of the Summerchase Development was done with the intent to discriminate against families with children.
 b. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect against families with children.
 c. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect because it has a disparate impact on minorities.
2. The Court denies defendants motion for summary judgment on the following FHA claims:
 a. The refusal to grant a permit necessary for the construction of the Summerchase Development was done with the intent to discriminate against minorities.
 b. The refusal to grant a permit necessary for the construction of the Summerchase Development has a discriminatory effect on minorities because it has a segregative effect.

B. *Due Process Claims Under 42 U.S.C. § 1983*

1. The Court grants defendants' motion for summary judgment or the following due process claims:
 a. The revocation of the building permit, the moratorium, and the refusal to accept permit applications by the Board of Aldermen constitutes a "compensatory taking."
 b. The revocation of the building permit by the Board of Aldermen is a violation of procedural due process.
 c. The imposition of the moratorium by the Board of Aldermen is a violation of procedural due process.
 d. The refusal to process applications by the City Clerk is a violation of procedural due process.
 e. The decisions by the Board of Aldermen to revoke the building permit, impose the moratorium, and to refuse to process permit applications are arbitrary, discriminatory and unlawful decisions in violation of substantive due process.
2. The Court denies defendants' motion for summary judgment on the following procedural due process claim:
 The decisions by the Board of Aldermen to revoke the building permit, impose the moratorium, and to refuse to process permit applications are arbitrary, discriminatory, and unlawful decisions in violation of procedural due process.

C. *Legislative Immunity: Defendants— Dragg, Marchand and Gordon*

As stated above, Dragg, Marchand, and Gordon, as members of the Board of Aldermen of the City of Gonzales, Louisiana, argue that each is entitled to summary judgment on the FHA and due process claims because each has either absolute immunity or qualified immunity. The Court denies the motion for summary judgment filed by Dragg, Mar-

chand, and Gordon based on their contention that each is entitled to absolute or qualified immunity.

D. *Liability of Mayor Berthelot and City Clerk Tripp*

1. *FHA Claims.;* The Court denies the motion by Mayor Berthelot and City Clerk Tripp for summary judgment on the remaining FHA claims.

2. *Procedural Due Process Claim*

 a. With regard to the remaining procedural due process claim, the Court finds the decision to revoke the permit and impose the moratorium involved only the actions of the Board of Aldermen, and did not involve Mayor Berthelot or City Clerk Tripp; therefore, since Mayor Berthelot and City Clerk Tripp were not involved this decision, the Court grants the motion by Mayor Berthelot and City Clerk Tripp for summary judgment on the claim that each violated procedural due process because these actions were arbitrary and discriminatory.

 b. The Court denies the motion by Mayor Berthelot and City Clerk Tripp for summary judgment holding there are genuine issues of material fact in dispute regarding whether the refusal to accept permit applications was an arbitrary decision in violation of procedural due process.